# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 12-03546-DD |
| | Chapter 13 |
| Rodney Phillip Oncale, II, | **ORDER** |
| Debtor. | |

This matter comes before the Court on the motion filed by GMAC Mortgage, LLC ("GMAC") to annul the automatic stay. The debtor, Rodney Phillip Oncale II ("Debtor"), responded in opposition to the motion. After careful consideration of the applicable law, evidence submitted, and arguments of counsel, as stated on the oral record at the August 7, 2013 hearing, the Court hereby denies GMAC's motion to annul the automatic stay.

## FACTS

Debtor filed chapter 13 bankruptcy at 10:08 a.m. on June 4, 2012. Hours later, on the afternoon of June 4, 2012, the Debtor's residence, located at 7925 East National Cemetery Road, Florence, South Carolina and subject to a mortgage in favor of GMAC, was sold at a foreclosure sale. There is no dispute that the Debtor filed bankruptcy before the foreclosure sale and the sale was therefore in violation of the automatic stay of 11 U.S.C. § 362(a). GMAC now seeks to validate the sale through annulment of the automatic stay, asserting that Debtor's alleged bad faith warrants such a remedy.

Prior to the bankruptcy Debtor and his now ex-wife, Juliet Oncale, separated. Juliet Oncale and the couple's two children moved to Tennessee while Debtor remained in South Carolina. At this point in time Debtor was employed with income in the range of $40,000.00 – 50,000.00 a year. Debtor testified that he paid approximately $9,000.00 in child support while so employed. Subsequently Debtor lost his job. At some point, the timing of the commencement of

1

the foreclosure action not being germane, GMAC commenced efforts to foreclose its mortgage. Debtor testified that during his period of unemployment his mother provided an unspecified sum of money that she paid directly to assist with supporting the children. Debtor received service of a divorce summons and complaint on February 23, 2012. During the separation, Debtor, as noted, provided voluntary payments in varying amounts to Juliet Oncale to support the two children. However, on Debtor's bankruptcy schedules, filed June 14, 2012, Debtor listed his child support obligation on Schedule J as $0.00. While Debtor did not include any amount owed in child support, Debtor did schedule Juliet Oncale, the Florence County, S.C. Family Court, the South Carolina Department of Social Services, and the Tennessee Department of Human Services as creditors holding unsecured priority claims in the form of domestic support obligations. The chapter 13 plan filed by Debtor proposed to cure his arrearage to GMAC over the term of the plan with monthly payments that were consistent with his projected available income.

Debtor's divorce was finalized by a default judgment entered on June 22, 2012, by the Bedford County, Tennessee family court. The default judgment included a Permanent Parenting Plan Order requiring Debtor to pay $1,625.00 per month beginning on June 23, 2012 in child support and $8,127.10 in retroactive support. The order also awarded Juliet Oncale $22,000.00 for her equity in the residence. The child support obligation was calculated using a gross monthly income for Debtor of $4,166.66, based on information provided by Juliet Oncale. At the time of the judgment, Debtor worked at a flower shop making minimum wage.

On July 16, 2012, Juliet Oncale filed two proofs of claim in the amount of $8,127.10 for retroactive child support and $22,000 for equity in the residence. She appeared at Debtor's meeting of creditors on July 17th and Debtor testified that he was surprised by her appearance.

2

He testified it was at the meeting of creditors that he first learned of the Tennessee family court judgment. Subsequently, on August 16, 2012, Debtor's bankruptcy case was dismissed for failure to file a confirmable plan primarily as a result of the non-dischargeable domestic support claims and the ongoing child support payments he had been ordered to pay.

In January of 2013, long after the post-petition foreclosure sale on June 4, 2012, and after the filing of the bankruptcy and its dismissal, GMAC evicted Debtor from the residence. Debtor has not lived at the residence since that time. GMAC did not move to annul the stay while Debtor's bankruptcy case was pending nor did it do so prior to moving forward with the eviction of Debtor. Debtor contacted his bankruptcy attorney after the eviction, and his attorney then raised the matter with GMAC's counsel.

On June 17, 2013, counsel for GMAC filed this motion to annul the automatic stay pursuant to 11 U.S.C. § 362(d) and 28 U.S.C. § 1334 in order to validate the foreclosure sale and subsequent eviction of Debtor. GMAC argues that Debtor acted in bad faith by filing bankruptcy knowing his child support obligations would prevent filing a feasible plan. Debtor filed a response objecting to the motion. A hearing on the matter was held on August 7, 2013.

Debtor testified at the hearing, acknowledging that he knew when he filed bankruptcy that he would have to pay some amount of child support and that he had in fact been paying voluntary child support when he was able since the separation. Debtor explained he had not been paying, and did not anticipate he would be ordered to pay $1,625.00 per month in support. At the time of filing the bankruptcy petition and schedules there was no child support order in place setting the amount of support owed. Debtor, who was GMAC's only witness, testified that his wife knew of his financial difficulties and that he was surprised by the amount of child

3

support ordered in that it exceeded his gross pay at the time. He also testified he believed that his mother would continue to help him provide financial support for his children.

Debtor further testified he filed bankruptcy in an attempt to save his residence and did not know at the time of filing that his child support obligation would make a bankruptcy plan unfeasible. Debtor explained that until GMAC evicted him from the residence in January of 2013 he believed that the bankruptcy filing had stopped the earlier foreclosure sale.

## CONCLUSIONS OF LAW

A petition filed under the Bankruptcy Code stays, among other things, acts to collect on a debt or enforce liens. 11 U.S.C. § 362(a). Generally, actions violating the automatic stay are void. In re Barr, 318 B.R. 592, 597 (Bankr. M.D. Fla. 2004). However, the Court has the authority "to annul the stay retroactively to validate actions that were taken in violation of such stay." In re Scott, 260 B.R. 375, 381 (Bankr. D. S.C. 2001; *see also* Shaw v. Ehrlich, 294 B.R. 260 (W.D. Va. 2003), aff'd, 99 Fed. Appx. 466 (4th Cir. 2004). Retroactive relief from the stay is appropriate only if a creditor can show compelling circumstances. Barr, 318 B.R. at 598. In the case of In re Scott, this Court held that decisions to grant retroactive relief "should be made on a case-by-case basis." 260 B.R. 375, 381 (Bankr. D.S.C. 2001). More specifically, the Scott case set forth a non-exhaustive list of factors courts have considered in balancing whether compelling circumstances exist that might justify retroactive relief from the stay:

> (1) [I]f the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the [stay]; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

Id. at 382 (citing In re Lett, 238 B.R. 167, 195 (Bankr. W.D. Mo. 1999)). "[T]hese items are merely a framework for analysis and not a scorecard," Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 25 (B.A.P. 9th Cir. 2003), as decisions regarding whether to grant retroactive relief from the stay are within the "wide latitude" of the Court and are made on a "case-by-case basis" when "compelling circumstances" are present. Scott, 260 B.R. at 381-82. Moreover, "courts are in agreement that allowing retroactive relief from the stay is the exception rather than the rule." Id. "[R]etroactive relief is an extraordinary remedy and should generally be granted in only unique or compelling circumstances since the violator is essentially asking the court to exercise its power to balance the equities between the parties." Kemper Ins. Co. v. Profile Sys., Inc. (In re Profile Sys., Inc.), 193 B.R. 507, 512 (Bankr. D. Minn. 1996).

At the August 7th hearing, counsel for GMAC primarily addressed Debtor's alleged bad faith in filing chapter 13 bankruptcy knowing he owed a child support obligation that would make any plan unfeasible. Counsel for GMAC stressed that Debtor could have estimated his child support liability by utilizing an on-line calculator that was referenced in the divorce papers served on Debtor. Debtor credibly testified that he did not file bankruptcy in bad faith. Debtor acknowledged he knew he would owe some amount of support at the time of filing, but he did not anticipate the amount would be as high as $1,625.00 per month and thus did not realize child suport would make any bankruptcy plan unfeasible. At the time of filing there was no child support order in place. While Debtor should not have scheduled the domestic support obligation as $0.00, Debtor did at least include Juliet Oncale and the Tennessee Department of Human Services as creditors holding unsecured priority claims in the form of domestic support obligations. Additionally, with respect to the actual amount of child support, Debtor's testimony was to the effect that whatever the amount of the child support expense his mother was covering

5

on his behalf, it was offset by the income to him of the contribution by his mother. In other words, at the time of filing for bankruptcy relief Debtor's net child support expense was in fact $0.00. Again, while this is not a fulsome disclosure of Debtor's financial circumstance, it is not determinative of bad faith. Considering Debtor's testimony and the facts of the case, GMAC, the party with the burden of proof, failed to demonstrate by a preponderance of the evidence that Debtor acted in bad faith.

While counsel for GMAC primarily focused at trial on the bad faith element, he did argue other evidence in his brief. The remaining circumstances, reviewed here seriatim, also do not lend sufficient support to GMAC's motion to annul the automatic stay.  While there is no evidence that GMAC had actual knowledge of the bankruptcy filing at the time of the foreclosure sale, it did have constructive knowledge of the filing in the public record and in fact received actual notice of the commencement of the bankruptcy before the case was dismissed. Consequently, it appears that GMAC hoped the sale in violation of the stay would go unnoticed and it only took steps to validate its actions after Debtor was evicted and his counsel raised the issue. Debtor's testimony at the August 7th hearing suggests that the residence was necessary for an effective reorganization. This is so even though the case ultimately failed.  His goal was to pay the mortgage arrearage over time and retention of the residence was necessary for this purpose. Importantly, this is Debtor's first bankruptcy petition and there is no pattern of multiple bankruptcy filings or suggestions of bad faith in dealing with creditors generally. It is unlikely that the Court would have granted a motion to lift the automatic stay at an early point in a bankruptcy case that lasted only a matter of weeks and that, until confirmation was derailed by a surprisingly high child support award, appeared to protect the interest of GMAC.  It does appear that there was no equity in the residence and GMAC will certainly incur additional expenses if

the annulment is not granted. However, there is no evidence these expenses are different than those any other creditor might face under these circumstances nor the expenses GMAC would have incurred had it addressed the bankruptcy filing nearer the time of sale. Finally, GMAC does not argue that it detrimentally changed its position in such a manner that retroactive relief is appropriate, as it states in its motion that this factor is "neutral."

Considering all of these factors and the allocation of the burden of proof necessary for the extraordinary relief GMAC seeks, the evidence does not indicate bad faith on the part of Debtor nor are there other grounds to retroactively annul the automatic stay.

**IT IS THEREFORE ORDERED:**

That GMAC's Motion to Annul the Automatic Stay is denied.

**FILED BY THE COURT**
**08/28/2013**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 08/28/2013